83 So.2d 220

**M. E. LEWIS et al.,**

**v.**

**Albert PARSONS, Exr., et al.**

**6 Div. 693.**

Supreme Court of Alabama.

Sept. 15, 1955.

Rehearing Denied Nov. 17, 1955.

McEniry, McEniry & McEniry, Bessemer, for appellants.

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellees.

LAWSON, Justice.

John M. Parsons sued appellants, M. E. and H. L. Lewis, in trespass. Defendants, upon a showing that the issue was one of disputed boundary line between coterminous landowners, had the cause removed to the equity court for the purpose of settling the boundary line. Thereupon the original defendants, as complainants, filed their bill in the equity court. Thereafter, the death of John M. Parsons being suggested, his children, the appellees, were made parties respondent by order of substitution and forthwith filed their answer.

The cause being submitted for final decree on pleadings and on testimony taken orally before the trial court, the court found and decreed the true boundary line substantially as claimed by appellees.

The line in dispute is that which separates the Parsons land on the north from the Lewis land on the south, all of which land is situated in Section 30, Township 19, Range 4 West, Jefferson County, and all of which was formerly owned by Mary A. Foster.

We understand the record to show that all parties to this appeal agree that according to their respective conveyances the boundary between the lands here involved is fixed as the center of a stream referred to in at least some of the conveyances as Foster's Branch, which runs in an easterly and westerly direction following a winding, sinuous course. We further understand that it is conceded that such has been the boundary line referred to in the several conveyances covering the lands here involved since title to the Parsons tract came out of Mary A. Foster in 1888.

But there was sharp disagreement as to the present location of the branch to which the deeds referred. The appellants contended and sought to show that the stream now known as Foster's Branch is approximately 100 feet south of the location of the branch which bore that name at the time title to the property here involved came out of Mary A. Foster, and that subsequent

conveyances in referring to the branch as Foster's Branch had reference to the original location. On the other hand, the appellees contended that there never had been but one branch running through the lands involved, namely, Foster's Branch, and that it has never changed its course. The trial court found with the appellees, saying: "By the preponderance of the evidence the channel of said Foster Branch has not materially changed its course since the year 1889, and the court so finds." We are in complete accord with the trial court on this finding of fact and we do not understand that the appellants challenge that finding here.

However, the trial court did not decree that the boundary line between the lands of the parties here involved is the center of Foster's Branch. It decreed that the boundary line is a straight east and west line running from an established point twenty feet south of Foster's Branch where that branch crosses the eastern boundary of the lands involved to an established point five feet north of Foster's Branch where said branch crosses the western boundary of the lands involved. The line so established crosses Foster's Branch at several points as that branch winds its way across the 580-foot strip of land and as a result some parts of the branch are north of the boundary line and other parts are south of that line.

■ The line so established is indeed a practical one for it enables all parties to have access to water and a fence may be constructed along the line, which could not be done practically along the center of the stream. But we know of no authority which authorizes a court in a case of this kind to fix a boundary line different from that called for in the muniments of title unless a different line has been established by adverse possession or by agreement.

■ The rule is well established that "if two owners of adjacent lands agree on a division line between tracts of land, and each holds possession for ten years, claiming to said line, the title becomes perfect without regard to the true location

of the boundary line between them." Isaacks v. Clayton, 254 Ala. 450, 48 So.2d 536, 537.

John M. Parsons, through whom the appellees derived title, secured his deed to the so-called Parsons tract in 1922. At that time the part of the Lewis tract here involved was owned by one M. T. Higginbottom. Shortly after John M. Parsons secured his deed Higginbottom had a survey made and in 1923 he and John M. Parsons established a line between their properties and built a fence thereon. According to the great weight of the evidence that fence, although repaired from time to time, remained at the place established by John M. Parsons and Higginbottom until moved approximately ninety feet north in 1951 by the appellants. The evidence fully supports the finding of the trial court on this issue, which is as follows:

"* * * John M. Parsons, deceased, through whom the respondents claim title, and H. G. [sic] Higginbottom, through whom the complainants claim title, agreed upon a fence line running in an East-West direction along the general line of the Foster Branch, which fence crossed the branch at two points and thereby placed a portion of the branch to the north of said fence and a portion of said branch to the south of said fence.

"The evidence showed that the said John M. Parsons did occupy, possess and claim all of the land here in controversy up to the fence which was jointly constructed by him and the said H. G. [sic] Higginbottom from the time said fence was constructed until on, to-wit: the 1st day of March, 1951, at which time said fence was removed by the complainants and a new fence constructed by the complainants along an East-West line at a point approximately 90 feet north of the fence hereinabove referred to as the fence originally constructed by J. M. Parsons and agreed to by H. G. [sic] Higginbottom."

■ So we hold that under the evidence presented the boundary line between the

lands here involved is that established in 1923 by the predecessors in title of the present owners.

That holding brings us to the question as to whether the line as fixed by the trial court is the line so agreed upon and established.

We cannot agree with the assertion made by counsel for appellants that there is no evidence to support a finding that the line so agreed upon was south of the branch at any point. The plat or map made by the surveyor employed by appellants shows that the fence was south of the branch for a considerable distance on the western side of the 580-foot strip of land involved. But it does not show the fence to have been south of the branch on the eastern side and the decree here appealed from does fix the easternmost part of the line south of the branch.

We are of the opinion that the line so fixed by the decree of the trial court is in accordance with the testimony of Wilford Parsons as to the location of the fence built by his father and Mr. Higginbottom. This witness, while looking at respondents' Exhibit 2, a map or plat of the lands involved, was asked the following question and gave the following answer:

"Q. I will ask you if this line south of that fence as shown on the map here [fence constructed by appellants] that I am tracing across here, it goes across the branch on the *east* side, then back on to the west side; is that generally along the line that your fence was?

"A. Yes, sir." (Italics supplied.)

We are convinced that the boundary line as decreed by the trial court is substantially that agreed upon by John M. Parsons and Higginbottom in 1923 and such deviations as may exist are inconsequential and certainly would not warrant a reversal of the decree or require us to attempt to render a decree here which could only differ from that of the trial court in minor respects. Not only was the testimony taken orally before the trial court, but several of the witnesses were examined about maps and plats in such manner as to make it impossible for us to fully evaluate their testimony.

The trial court did not delegate to the surveyor Keel the responsibility of locating and defining the boundary line. The court located and defined the line and then directed the surveyor to establish the line so defined by placing plainly marked stakes at the points designated in the court's decree. A map or plat of the line so established by the surveyor is attached to and made a part of the decree. The decree reads in part: "Plainly marked iron stakes have been placed by said impartial surveyor at the points designated herein, and along said boundary line." For aught that appears of record, the iron stakes were plainly marked "judicial landmark." There is no question but what the surveyor Keel has placed the markers in the places described in the court's decree. Certainly the decree should not be reversed because Keel, the surveyor designated by the court to carry out its order, had been called as a witness by the Parsons.

The taxation of costs in equity proceedings is governed by Equity Rule 112, Code 1940, Title 7, Appendix, which in pertinent part is as follows:

"Costs will be imposed by the court or judge having jurisdiction at such times during the litigation as he deems proper, subject to correction for improper exercise of his discretion, and may be apportioned by him between the parties; * * *."

In Thompson v. Bryant, 251 Ala. 566, 38 So.2d 590, 593, we said: "In equity the matter of costs rests largely in the discretion of the chancellor."

And in Dozier v. Payne, 244 Ala. 476, 14 So.2d 376, 377, it was said of Equity Rule 112, supra:

"* * * An 'improper' exercise of discretion appears when the record, after indulging all fair intendments in favor of the ruling, discloses the taxation of costs was unjust and unfair.

"Otherwise the action of the trial court should not be disturbed."

In the instant case the trial court taxed all of the costs, except one-half of the surveyor's fee, against the appellants, the unsuccessful parties. We are unwilling to say that such action constituted an improper exercise of discretion.

The decree is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.