213 So.2d 914

**Reba P. JONES et al.**

**v.**

**Joe WISE et al.**

**4 Div. 279.**

Supreme Court of Alabama.

Aug. 15, 1968.

Rehearing Denied Sept. 26, 1968.

708

Thad G. Long and Bradley, Arant, Rose & White, Birmingham, for appellants.

W. G. Hardwick and Jere C. Segrest, Dothan, for appellees.

. MERRILL, Justice. ·

This case was originally assigned to another member of the court and was re-assigned to the author of this opinion on July 29, 1968.

This appeal is from a decree setting the boundary line between the parties. The bill was filed by appellees (Wise) and both they and the appellants (Jones) agreed that they were coterminous owners, the line was disputed and requested that the court determine the matter under its authority pursuant to Tit. 13, § 129 and Tit. 47, § 3, Code 1940. The disputed strip is cone-shaped and about twelve feet across at its widest point.

Both lots originally came from a common source of title, G. W. Smith, who received a deed to:

"One lot in Dothan, bounded on South by J. J. Patterson's lot, on East by Lena Street, on North by next (evidently Adams) Street and on the West by Alice Street, said lot being a part of the NW ¼ of NW¼ of Section 24, Township 3, Range 26, containing 2 acres, more or less."

The Jones property lies north of the Wise property. The Jones deed showed their lot to be bounded on the south by the lot of J. E. Wise (appellee). The Wise deed showed their lot was bounded on north by the "lot of N. B. Crawford." Crawford sold to Pilcher, and Pilcher sold to appellants, both deeds making the south boundary the J. E. Wise lot.

Appellants argue first some ten related assignments of error which, according to appellants, charge in effect that the trial court erred in "admitting into evidence, considering and materially relying on the testimony of a surveyor as to the location of the true boundary line."

The surveyor, Claude Bence, had had eighteen years experience as a land surveyor, was licensed in Alabama, Georgia and Florida, had taken courses with reference to surveying from both the University of Alabama and Auburn University, and his qualifications as an expert were not questioned at the trial.

Bence testified that he had made a previous survey for appellees before the controversy arose between them and appellants; that he had deeds to both parties' lots; that he talked with the husband of one of the appellants and one of the appellees; that he was unable to establish the boundary line from the examination of the deeds furnished to him or an examination of copies of deeds he found in the courthouse, in that the descriptions contained in said deeds merely stated that one property was bound-ed by the property of the other and the other property was bounded by the property of the former with no distances or courses being given; that he found existing landmarks which consisted of a fence, an old hedgerow, both of which seemed to have been in existence for a great number of years; that a wooden lattice fence ran from the corner of a barn or out-building; that west of said barn a block wall and fence existed and further west of the block wall a fence and hedgerow existed, and that all the fences, walls, building extremities and hedgerow constituted a straight line which when projected toward Lena Street directly intersected a pecan tree and a slight swale or depression in the land surface resembling a valley. Based on these factors, he stated that in his judgment and opinion as a land surveyor, this constituted the true boundary line between the lands of the appellants and the appellees.

Plats of both of Bence's surveys were admitted into evidence. He was the only surveyor who did testify and the record shows that prior to the submission of the cause to the trial court, counsel for appellees stated to the court:

"Judge, of course, we have gone to the expense of making a pretty thorough survey and tried to get the other parties to make another survey, so we might be able to get together and see who is right and who is wrong. They have refused to do it. * * *"

This was not denied by counsel for appellants. Bence's was the only testimony and actually was the only evidence that stated the exact position of the boundary line.

Appellants argue that the surveys made by Bence were not in accordance with Tit. 56, § 7, Code 1940, and were not prima facie evidence of the correctness of the matters on the plats, including the boundary line. With this we agree, but we are unable to find anything in the record or the decree of the trial court which treats the

plats or Bence's testimony as anything more than evidence in the case.

A surveyor, shown to have experience as such, may testify as a witness to his survey and its correctness, whereupon the plat or map may be admitted in evidence in connection with his testimony. Calvert v. Bynum, 255 Ala. 172, 50 So.2d 731; Hill v. Johnson, 214 Ala. 194, 106 So. 814.

A surveyor of long experience may sometimes give his opinion as an expert that a line he has surveyed is the true line. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477.

We find no reversible error in the rulings of the trial court made the subject of the ten assignments of error 7–11, 13–15, 18 and 19.

Assignments of error 5 and 6 charge in effect that the court erred "in failing to construe relevant descriptions from deeds and in failing to find the true boundary line in accordance with such descriptions."

It is sufficient to say that we cannot agree with appellants on these points. We think both the surveyor and the trial court were correct in arriving at the conclusion that the proper boundary line could not be established from the descriptions of the deeds alone. Also, we do not agree that the trial court adopted a policy of "the complete ignoring of deeds" in arriving at its conclusion. We think the court's reference to the fact that the descriptions in some instances merely bounded one person's property by the property of an adjoining owner, and that many measurements were qualified with "more or less" clauses, is fair and applicable to this case. We do not understand the trial court to hold that a deed is too vague or uncertain to be considered merely because it bounds one owner's property by the property of another, or that the deed is uncertain because distances are followed by a "more or less"

clause. We think the trial court was pointing up the uncertainty as to the boundary line between the parties, and the difficulties with which it was faced in reaching a decision.

Assignment of error 12 charges that the trial court erred in giving an estoppel effect to an involuntary paving assessment made against parties other than appellants and in relying materially thereon in determining the boundary line.

We do not consider what the trial court said in the decree, which will appear in this opinion, to be an estoppel or that it gave the evidence of the paving assessments "an estoppel effect." We think it bolstered the decree by showing that there was very little difference, less than two feet, in the assessment to the father of appellees and his coterminous owner to. the north, Crawford, and the entire block frontage as shown by the Bence survey.

Assignment 3 charges that the court erred in rendering its decree because the evidence was insufficient to support it. Because the trial court discussed the matter in detail, we quote pertinent parts of the decree:

"The Court has carefully considered the said testimony and the Exhibits thereto, and is reasonably satisfied that the plaintiffs are entitled to relief under their substituted bill of complaint which seeks to have the boundary line between the real property of the plaintiffs and the real property of the defendants fixed, defined and established, and the Court so adjudges and decrees.

"The testimony taken in this cause was lengthy and the transcript voluminous, and the Court was impressed with the opinion that the memories of many of the witnesses testifying in said cause were dimmed by the passage of time. The muniments of title in the form of deeds introduced into evi-

dence were in many respects inconclusive because the descriptions in some instances merely bounded one person's property on the property of an adjoining owner; or if measurements were set out, they were often qualified with 'More or Less' clauses that removed the measurement from a fixed or definite description capable of being determinative of accurate findings.

"The only witness testifying that possessed the qualities of an expert as to any special qualifications was the licensed land surveyor, Bence. His testimony was to the over-all effect that he could not locate the boundary line between the parties from the various deeds or records available to him, and that he had to fall back on the physical facts as he found them existing at the time he physically inspected and surveyed the premises; which he stated is considered usual, accepted, authoritative, and recommended practice of land surveyors under such circumstances.

"Mr. Bence further testified that he found existing land marks, consisting of a fence and an old hedge-row that seemed to him to have been in existence for years; that a wooden fence ran to the corner of a barn or out-building; that west of the said barn a block wall existed, and further west of the block wall, a hedge-row existed; that all of said fences, walls, building extremities and hedge-row constituted a straight line. He further testified that east of the existing fences and apparent land marks observed; that a 'swale' or slight depression in the land surface resembling a little valley, continued on eastward in a straight line to the west side of Lena Street; that if a straight line is projected from Alice Street to Lena Street, following the fences, hedge-row, back of barn, and the 'swale' as found, the line would intersect the West side of Lena Street at a point exactly 84.95 feet south of the inside of the sidewalk on the South side of Adams Street; and that the inside of the said sidewalk was a distance of exactly eight feet from the back of the curb on the south side of Adams Street; that the over-all distance from the back of the curb on the south side of Adams Street to the said point so located by projecting or continuing a straight line along the fences, hedge-row, back of barn, and 'swale' to the west side of Lena Street would be 92.95 feet.

"From the evidence adduced in this case, the Court is unable to determine when Adams Street was established or upon just what property it encroached when it was opened to the public for use as a thoroughfare. The only definite fact as to the bearings of Adams and Troy Streets is the certainty that they do not run exactly parallel; the distance along Alice Street between Adams and Troy Streets being more than eight feet longer that the distance dividing said streets on Lena Street.

"Exhibit 'A' offered in evidence by the plaintiffs, is a plat or diagram made by the witness, Bence, in his survey, which he states is a true and correct plat or diagram of the surveyed boundary line separating the real properties of the parties to this suit, and showing the correct measurements of the lines and boundaries pertinent to this cause.

"This Court must give much credence to the uncontroverted testimony of an expert witness.

"Another remarkable coincidence in co-relating the testimony and Exhibits in this case is the plaintiffs' Exhibit No. 20, which shows that in the year 1911, the City of Dothan assessed paving charges against N. B. Crawford (defendants' predecessor in title) for 92.25 feet of sidewalk paving fronting on the West side of Lena Street. Such measurement from the curb on Adams Street along the west side of Lena Street is within a fraction of a foot of the point located by the surveyor, Bence. The same exhibit also reveals that in the said year of 1911, a paving assessment against the J. E. Wise property (Plaintiffs' predecessor in title) for sidewalk paving along Lena

Street was for 191.6 feet. Other evidence shows that in the year 1912, Wise bought an additional ten feet fronting on Lena Street from Mr. and Mrs. J. J. Flowers and assumed the sidewalk paving for the additional ten feet (Plaintiffs' Exhibit 21) and that Wise's total paving footage on Lena Street adds up to 201.6 feet, only a fraction of a foot less than shown by the plat or diagram prepared by the surveyor, Bence, which shows Wise with 202.09 feet along the West side of Lena Street."

We think there was sufficient evidence to support the decree.

■ ▮▮▮ A decree establishing a boundary line between coterminous lands on evidence submitted ore tenus in open court is presumed to be correct; and in such case the trial court's conclusions will not be disturbed unless plainly erroneous or manifestly unjust. Greif Bros. Cooperage Corp. v. Sawyer, 269 Ala. 513, 114 So.2d 259; Salter v. Cobb, 264 Ala. 609, 88 So.2d 845. And where the trial court sees and hears the witnesses testify, its findings which determine questions of fact will not be disturbed on appeal unless plainly wrong. Christian v. Reed, 265 Ala. 533, 92 So.2d 881; Early v. Beavers, 277 Ala. 78, 167 So.2d 161. We cannot say that the trial court's conclusion in this cause was plainly wrong.

▮▮▮ Assignment 4 charges the decree was contrary to law. Such an assignment of error is too general and will not be considered on appeal. Franklin v. State, ex rel. Trammell, 275 Ala. 92, 152 So.2d 158; Thompson v. State, 267 Ala. 22, 99 So.2d 198; Mulkin v. McDonough Construction Co. of Georgia, 266 Ala. 281, 95 So.2d 921; King v. Jackson, 264 Ala. 339, 87 So.2d 623. A ground of a motion for a new trial that the verdict or judgment is contrary to law is without merit, because the body of law is tremendous and complex, and the errors of law complained of, or in what respect the verdict, judgment or decree is contrary to it, should be specifically pointed out so the court's attention will be directed to them. Atlantic Coast Line R. Co. v.

Burkett, 207 Ala. 344, 92 So. 456; State v. Boone, 276 Ala. 16, 158 So.2d 658; Danley v. Marshall Lumber & Mill Co., 277 Ala. 551, 173 So.2d 94.

No reversible error has been presented.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.